UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JERRY BOLLENBACH,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:09-cv-597

Honorable Robert Holmes Bell

**REPORT AND RECOMMENDATION**

     This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a partially favorable decision of the Commissioner of Social Security on plaintiff's claim for SSI benefits. The Commissioner found that on and after January 1, 2009, plaintiff was disabled and entitled to supplemental security income (SSI) benefits. Plaintiff's request for judicial review is limited to the portion of the Commissioner's decision finding that he was not disabled from October 4, 2006, through December 31, 2008.

     On October 4, 2006, plaintiff filed his application for SSI benefits[1]. (A.R. 76-78). His claim was denied on initial review. (A.R. 35-40). On March 23, 2009, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R.

---

[1] Plaintiff initially claimed a July 1, 2003 onset of disability. (A.R. 76). He later amended his alleged onset of disability date to October 4, 2006. (A.R. 128-29; *see* A.R. 21-22). Further, SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, November 2006 is plaintiff's earliest possible entitlement to SSI benefits.

18-34). On April 22, 2009, the ALJ issued a decision finding that plaintiff was disabled on and after January 1, 2009, but not before that date. (A.R. 11-17). On June 8, 2009, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

On June 29, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision. He argues that the Commissioner's decision should be overturned because it is not supported by substantial evidence on the record as a whole. (Statement of Errors, Plf. Brief at iii, docket # 9). Upon review, I find that plaintiff's argument is devoid of merit. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the

Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after October 4, 2006.[2] (A.R. 13). Plaintiff had the following severe impairments: "arthritis and a right shoulder impairment." (A.R. 13). He did not have an impairment or combination of impairments

---

[2]The ALJ determined that plaintiff had not engaged in substantial gainful activity on or after July 1, 2003 (A.R. 13), but he found no basis to reopen plaintiff's earlier SSI benefits applications of "February 23, 2006 and July 24, 2006 that were denied by notices dated February 24, 2006 and August 3, 2006, respectively." (A.R. 11). An ALJ's decision not to reopen earlier decisions denying claims for SSI benefits is generally not subject to judicial review. *See Califano v. Sanders*, 430 U.S. 99, 107-09 (1977). "The exception is where a claimant raises a colorable constitutional claim." *Anderson v. Commissioner*, 195 F. App'x 366, 369 (6th Cir. 2006). Plaintiff has not alleged a claim falling within the exception.

which met or equaled the requirements of the listing of impairments. (A.R. 14). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> The claimant retains the residual functional capacity to perform light work except that he is further limited to occasional overhead reaching with the left upper extremity and no overhead reaching with the right upper extremity; frequent, as opposed to constant, gross bilateral manipulation; and frequent bilateral reaching.

(A.R. 14). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible:
> The medical evidence documents treatment primarily through Hackley Community Care Center for arthritic complaints referable to the hands, knees, and back as well as persistent shoulder pain. (Exhibits 2F, 10F, 11F, and 12F)[A.R. 137-85, 218-306]. With respect to his back complaints, examinations disclosed limitation of motion and tenderness with no neurological compromise or radiating symptoms to the upper or lower extremities. X-rays of February 2004 of the lumbar spine were interpreted as negative; however, more recent x-rays of October 2006 showed "mild degenerative changes" mostly in the thoracolumbar junction with no signs of an acute process (Exhibits 2F/26 and 3F/16)[A.R. 162, 191]. The complaints of severe pain were persistent with no significant changes. The claimant also complained of knee pain manifested by limitation of motion, tenderness, and crepitance. Donald Sheill, M.D., conducted a consultative examination and reported in March 2007 that there was swelling, tenderness and minor crepitance (Exhibit 6F)[A.R. 199-206]. Dr. Sheill also noted there was stiffness of the left thumb with tenderness at the carpometacarpal joints of the thumbs (Exhibit 6F)[A.R.206]. An x-ray report of January 2008 of the hands disclosed mild to moderate degenerative changes at the first carpometacarpal joint on the right with a small exostosis from the ulnar aspect of the fifth proximal phalanx (Exhibit 10F/39)[A.R. 256].
>
> The medical evidence also documents evaluation and treatment for right shoulder pain. Examinations consistently showed restriction of motion, tenderness and crepitance. Dr. Sheill also noted limitation of motion and diagnosed chronic right shoulder problems -- frozen shoulder at time of examination (Exhibits 2F and 6F)[A.R. 137-85, 199-206].
>
> It is evident that the claimant suffers arthritic symptoms primarily in his back, knees, hands and right shoulder. In determining residual functional capacity I considered and rely on the assessment of the state agency consulting physician (Exhibit 9F)[A.R. 210-17]. The state agency consulting physician opined that there was a capacity for light work with an ability to only occasionally use the left upper extremity for overhead work but no ability to use the right upper extremity for overhead work and frequently use the bilateral upper extremities for gross manipulation and reaching. This assessment is supported by the weight of the evidence.

> There is medical evidence of arthritic changes and symptoms that reduce the claimant's functional capacity for more than a limited range of light work. The abnormal clinical and laboratory findings, however are not so significant as to prevent a limited level of light work function as found herein. Medical care has also been of a conservative and symptomatic type that is consistent with a limited range of light work. There are no signs of significant muscle atrophy due to disuse from pain, nor is there evidence of significant neurological compromise.
>
> It is also noted that the claimant's reported activities are not inconsistent with light work functions (Exhibit 4E)[A.R. 103-10]. The claimant was also evaluated on an emergency basis in August 2006. At that time, the examining physician noted that the claimant was "working on a Jeep when something fell in his eye." (Exhibit 3F/7)[A.R. 192]. I find that the claimant's activities have not been established as to be so limited as to be inconsistent with the findings herein. The claimant's subjective complaints were considered in determining his residual functional capacity. There are arthritic changes that could cause the symptoms alleged. The alleged severity of the symptoms is credible to the extent that they are consistent with my finding of functional abilities. The medical findings, as evaluated above, show a diminished capacity to the limited range of light work. It is also noted that the claimant sought medical attention for his symptoms that shows he remains chronically symptomatic. As noted, his reported [activities] are not established as inconsistent with the ability for light work functions with some non-exertional limitations. The claimant is able to drive for short distances; does some household chores, laundry and shopping; and cares for his pet that includes walking a dog. While these activities are not as grueling as work activity and do not establish an ability to perform substantial gainful activity, they do show an []ability for a limited range of work functions as found herein, in light of the record as a whole. The claimant reported in July 2006 that his medications allow[ed] him to walk his dog, complete household chores, sleep better and with less pain (Exhibit 2F/10)[A.R. 146]. The claimant's earnings record shows that his motivation for work is reduced. He also reported an inability to pursue mechanical repairs on motorcycles but, as noted, was seen in the emergency room after suffering an eye abrasion while working on a Jeep. These factors reduce the credibility of allegations of a residual functional capacity that is more restrictive than found herein. When considering the evidence as a whole, I find that the alleged intensity, persistence, and functionally limiting effects of the subjective complaints are credible only to the extent that they are consistent with the finding of functional capacity.

(A.R. 14-15). Plaintiff was unable to perform his past relevant work as a motorcycle mechanic and forklift operator. (A.R. 15). Plaintiff was 52-years-old as of his alleged onset of disability, and classified as a person closely approaching advanced age. (A.R. 15). "On January 1, 2009, the claimant was 54 years of age and several months short of attaining age 55 or advanced age. Without

applying the regulatory age criteria mechanically, the claimant [was] considered to have been of advanced age as of January 1, 2009." (A.R. 15). Plaintiff has a limited education and is able to communicate in English. (A.R. 16). The ALJ found that plaintiff did not have transferable job skills. (A.R. 16). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE "identified 250,000 small products assembler jobs in the national economy and 1,500 in the local economy, and one [point] five million office helper jobs in the national economy and 2,000 jobs in the local economy." (A.R. 16; *see* A.R. 31-33). The ALJ found that this constituted a significant number of jobs. Using Rule 202.11 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled before January 1, 2009. (A.R. 16).

On and after January 1, 2009, plaintiff was classified as an individual of advanced age and was disabled:

> Beginning on January 1, 2009, the date when the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there [were] not a significant number of jobs in the national economy that the claimant could perform (20 C.F.R. 416.960(c) and 416.966).
>
> Beginning January 1, 2009, the claimant's vocational profile changed and he was considered to be of advanced age. Even if the claimant retained the ability to perform a full range of light work, his vocational profile and residual functional capacity for light work would coincide with Rule 202.02 of the Medical Vocational Guidelines, which directs a finding of "disabled." Since the claimant is unable to perform even a full range of light work, the Medical Vocational Guideline rule is used as a framework for decisionmaking and the claimant is found to be disabled beginning January 1, 2009, but prior thereto.

(A.R. 16-17).

**1.**

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence on the record as a whole. (Plf. Brief at iii, docket # 9). On March 8, 2007, a state agency physician completed a functional capacity assessment. (A.R. 210-17). The ALJ found that this evaluation was persuasive with regard to appropriate restrictions on plaintiff's use of his upper extremities. (A.R. 14). Plaintiff argues that there were "numerous clinical findings and diagnoses after March 8, 2007, that obviously were not considered by the medical consultant," followed by a list of his medical records dated after March 8, 2007. (Plf. Brief at 1-2). It is not sufficient for plaintiff to identify evidence from which the ALJ might have reached a different conclusion regarding his claim. The statutory scope of this court's review is narrow. The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. There is a "zone of choice" within which the Commissioner can act without fear of court interference. *Buxton*, 246 F.3d at 772-73; *White v. Commissioner*, 572 F.3d 272, 281-82 (6th Cir. 2009). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477. The Commissioner's decision finding that plaintiff was not disabled before January 1, 2009, is supported by more than substantial evidence.

**2.**

The remainder of plaintiff's brief is devoted to the following series of one-sentence arguments:

Neither the Administrative Law Judge nor the consultant considered the claimant's chronic pain syndrome, polyarthralgias or obesity at 5'9" and 230 plus pounds.[3]

In addition, the Administrative Law Judge misinterpreted and misquoted the consultant's actual opinions in both his findings and hypothetical.

The consultant allegedly relied on by the Administrative Law Judge, actually provides that the claimant could occasionally balance, stoop, kneel, climb or crouch. (T-212).

The consultant was also of the opinion that the claimant was limited in reaching in all directions, no[t] just overhead as stated by the Administrative Law Judge. (T-213).

The consultant also opined that the claimant was limited in handling and gross manipulation. (T-213).

It is clear that the consultant's limitations at T 212-213, would preclude light work and limit the claimant at most to sedentary work.

Light work by definition requires frequent use of the hands and arms for grasping and hol[d]ing.

The claimant is entitled to a period of disability pursuant to Rule 201.10 at age 50, on June 29, 2004[4].

(Plf. Brief at 2). Plaintiff's arguments are undeveloped and not supported by legal authority. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Allen v. Highland Hosp. Corp.*, 545 F.3d 387, 406 (6th Cir. 2008); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

---

[3]Plaintiff never alleged that he suffered from obesity-related functional restrictions. His prehearing brief did not list obesity as an impairment. (A.R. 128-29). Plaintiff's medical records, with the exception of a December 6, 2006 progress note (A.R. 245), do not describe him as being obese. Plaintiff did not testify that he suffered from obesity-related functional restrictions.

[4]Rule 201.10 applies to individuals restricted to sedentary work. Plaintiff was capable of performing a limited range of light work.

Even assuming *arguendo*, that these issues had not been waived, they are patently meritless. This case turned on the ALJ's credibility determination regarding plaintiff's subjective complaints. The ALJ found that plaintiff's testimony was not fully credible. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human*

*Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). The ALJ noted that x-rays of plaintiff's spine showed only "mild" degenerative changes. (A.R. 14, 19, 247). Plaintiff's MRI was within normal limits. (A.R. 294). X-rays of plaintiff's knees returned normal results (A.R. 204) and x-rays of his right hand revealed "no acute osseous abnormality." (A.R. 255). Plaintiff did not suffer from any significant atrophy or neurological deficits. *See Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find that the ALJ's credibility determination is supported by more than substantial evidence.

The ALJ found that plaintiff retained the RFC for a range of light work with the additional restrictions of "occasional overhead reaching with the left upper extremity and no overhead reaching with the right upper extremity; frequent, as opposed to constant, gross bilateral manipulation; and frequent bilateral reaching" (A.R. 14). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is a determination made by the ALJ based upon all the evidence within the record. 20 C.F.R. § 416.945(a)(3). Contrary to plaintiff's argument, the ALJ's opinion accurately incorporated the state agency physician's proffered restrictions regarding overhead reaching and bilateral manipulation. (A.R. 213, ¶ (C)( 5)). The ALJ was not persuaded that plaintiff

required additional postural restrictions. (A.R. 14, 212). This was consistent with the objective x-ray and MRI evidence, plaintiff's observed functional abilities (A.R. 199-206), and the ALJ's credibility determination (A.R. 14-15). I find no error.

Plaintiff's argument that the ALJ should have found that he was disabled as of June 29, 2004, is frivolous. *See* 20 C.F.R. § 416.335. Plaintiff has cited no authority that would entitle him to an award of SSI benefits more than two years before his application for benefits and alleged onset of disability.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: March 23, 2010          /s/ Joseph G. Scoville
                               United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).